[Sac. No. 7881. In Bank. May 3, 1971.]

JACK H. ZEILENGA, JR., et al., Plaintiffs and Appellants, v. CLARK A. NELSON, as County Clerk, etc., Defendant and Respondent.

## COUNSEL

Blackmon, Isenberg & Moulds and Phillip L. Isenberg for Plaintiffs and Appellants.

Paul N. Halvonik and Charles C. Marson as Amici Curiae on behalf of Plaintiffs and Appellants.

Daniel V. Blackstock, County Counsel, and Neil H. McCabe, Deputy County Counsel, for Defendant and Respondent.

Thomas M. O'Connor, City Attorney (City and County of San Francisco), and Burk E. Delventhal, Deputy City Attorney, as Amici Curiae on behalf of Defendant and Respondent.

## OPINION

**PETERS, J.**—In this proceeding to determine the constitutionality of durational residency requirements imposed by the Butte County Charter for candidates for the county board of supervisors, plaintiffs (hereafter referred to for convenience as petitioners) appealed from a judgment of the trial court upholding the constitutionality of the charter provision and denying the relief requested.

After decision by the Court of Appeal, Third District, we granted a hearing in this court because the decision of the Court of Appeal appeared to conflict with this court's holding in *Sheehan* v. *Scott* (1905) 145 Cal. 684 [79 P. 350]. We have concluded that *Sheehan* should be overruled and that the opinion of the Court of Appeal prepared by Justice Bray* and concurred in by Presiding Justice Pierce and Justice Regan, as modified, correctly treats and disposes of the constitutional question presented. We adopt such opinion with certain deletions and additions as and for the

---

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

opinion of this court. Such opinion is as follows:* [   ] Petitioner Zeilenga has resided in Butte County since August 1968. On February 24, 1970, respondent Clark A. Nelson, county clerk of that county, refused to issue nomination papers to Zeilenga for the office of supervisor of the Third Supervisorial District (to be elected June 2, 1970) solely on the ground that, as required by the county charter hereinafter discussed, he had not been a resident of the county for the previous five years; he had been such resident for only approximately one and one-half years. Petitioners other than Zeilenga are registered voters of the Third Supervisorial District of the county who certified that they would sign his nomination papers for that office and would vote for him if given the opportunity.

Petitioners filed in the Butte County Superior Court a petition for writ of mandate to compel County Clerk Nelson to certify petitioner Zeilenga as a candidate for supervisor of the Third District. After a hearing, the petition was denied. This appeal followed. [   ]

By the time the superior court proceeding had terminated and this appeal had been perfected, there was not time before the June 2 election took place for this court to pass upon the problem involved in the appeal. In a sense the problem is moot because obviously the court may not require the county clerk to certify Zeilenga as a candidate at an election which has already taken place. However, the basic issue—namely, Is the county charter provision, hereinafter discussed, constitutional?—is one which deprives any Butte County resident who has not lived in Butte County five years of the right to run for county supervisor. This issue is a vital one for the people of Butte County, and is one of general public interest and should be determined before the next election for county supervisor.[1]

█   Likewise, the issue does not become moot merely because the question is of no further immediate interest to the person who raised it. (See *Board of Education* v. *Watson* (1966) 63 Cal.2d 829, 832 [48 Cal. Rptr. 481, 409 P.2d 481].) As said in *Rees* v. *Layton* (1970) 6 Cal.App.3d 815, 819 [86 Cal.Rptr. 268] (hg. den.), concerning the validity of a certain

---

*Brackets together, in this manner [ ] *without enclosing material,* are used to indicate deletions from the opinion of the Court of Appeal; brackets *enclosing material* (other than editor's added parallel citations) are, unless otherwise indicated, used to denote insertions or additions by this court. We thus avoid the extension of quotation marks within quotation marks, which would be incident to the use of such conventional punctuation, and at the same time accurately indicate the matter quoted. In so doing, we adhere to a method of adoption employed by us in the past. (See *Chicago Title Ins. Co.* v. *Great Western Financial Corp.* (1968) 69 Cal.2d 305, 311, fn. 2 [70 Cal.Rptr. 849, 444 P.2d 481], and cases cited therein.)

[1]The time between the filing of candidates' nomination papers and the election is so short that it would be difficult to get a ruling from all the courts which might be involved, if a test is required in the future.

section of the Elections Code of the City of Los Angeles, "Since the election has been held, these cases are now moot. However, since the questions raised thereby will arise at future . . . elections, the basic issues are not moot and an opinion thereon is proper."

In an additional sense the matter is not moot since the charter provision, if valid, will prevent petitioner Zeilenga from being a candidate for the office of supervisor either by election or appointment, should there become a vacancy, until August 1973, as he will not have resided in Butte County for the necessary five years before that date. [   ]

Article II, section 2, of the Butte County Charter provides in relevant part: "The County of Butte shall have a Board of Supervisors, consisting of five members, each of whom must be an elector of the supervisorial district which he represents, must reside therein during his incumbency, *must have been a resident of the county for five years immediately preceding his election,* and shall be elected by the electors of the district which he is to represent. . . ." (Stats. 1917, ch. 15, at p. 1793.) (Italics ours.) [   ]

■ [   ] Section 275 of the Government Code [does not] control over the charter provision setting forth the qualifications for the office of supervisor. That section states, *"Unless otherwise specifically provided,* every elector is eligible to the office for which he is an elector, . . ." (Italics ours.) As herein shown, so far as residence qualification is concerned, it *is* "otherwise specifically provided" in the Butte County Charter, and section 275 does not automatically qualify a person for office. To interpret that it does would fly in the face of many different residency requirements for public office found elsewhere and even in the face of section 25041 of the Government Code. (See *Jones* v. *De Shields* (1921) 187 Cal. 331, 336 [202 P. 137].) [   ]

This brings us then to the question of whether section 2 of article II of the Butte County Charter is unreasonably discriminatory and violates the Fourteenth Amendment of the United States Constitution as a denial of equal protection.

■ "[T]he right to hold public office, either by election or appointment, is one of the valuable rights of citizenship." (*Carter* v. *Commission on Qualifications of Judicial Appointments* (1939) 14 Cal.2d 179, 182 [93 P.2d 140].) It is a "fundamental right" (*Fort* v. *Civil Service Commission* (1964) 61 Cal.2d 331, 335 [38 Cal.Rptr. 625, 392 P.2d 385]) which the First Amendment protects against infringement (*Johnson* v. *State Civil Service Department* (1968) 280 Minn. 61 [157 N.W.2d 747, 750]; *Minielly* v. *State* (1966) 242 Ore. 490 [411 P.2d 69, 73, 28 A.L.R.3d 705]). ■ There is "a federal constitutional right to be considered for public

service without the burden of invidiously discriminatory disqualifications." (*Turner* v. *Fouche* (1970) 396 U.S. 346, 362 [24 L.Ed.2d 567, 580, 90 S.Ct. 532].) ■ To justify any impairment of First Amendment rights, there must be present a compelling governmental interest. (*Huntley* v. *Public Util. Com.* (1968) 69 Cal.2d 67, 74 [69 Cal.Rptr. 605, 442 P.2d 685].)

In *Landes* v. *Town of North Hempstead* (1967) 20 N.Y.2d 417 [284 N.Y.S.2d 441, 231 N.E.2d 120, 121], the court said: "Although 'the Legislature may prescribe qualifications for office . . . it has been settled law from the earliest period in the history of our state that it cannot enact arbitrary exclusions from office.' . . . Qualifications for office must have a rational basis, such as age, integrity, training or, perhaps, residence. . . . If a classification is employed in prescribing qualifications, it must be nondiscriminatory and '*based on a real and substantial difference* having reasonable relation' to the object sought to be accomplished by the legislation. . . ." (Italics ours.)

And in *Gangemi* v. *Rosengard* (1965) 44 N.J. 166 [207 A.2d 665, 667], the court said: "[T]he right to vote would be empty indeed if it did not include the right of choice for whom to vote. . . . This does not mean there must be perfect equality between the two. . . . But it does mean that in judging the validity of a restraint upon eligibility for elective office, we must be mindful that the restraint is upon the right to vote as well. . . . [¶] Far from being unrestricted, the power to prescribe qualifications for elective office is sharply limited by the constitutional guaranty of a right to vote. A prescribed qualification for office must relate to the needs of office-holding as such or the special needs of the particular office involved, with the voters free to judge the personal or individual fitness of the candidates who have those basic qualifications. The line separating the basic needs of office from the individual fitness of a candidate, perhaps more easily felt than described, is vital, and the fundamental value involved is best served if the judiciary insists that the reason for the inroad upon the right to vote be *real, and clear, and compelling*." (Italics ours.)

■ A classification created for legislative purposes must be reasonable and not arbitrary. (11 Cal.Jur. 2d, Constitutional Law, § 275, p. 722.) ■ The "compelling interest" test applies if the result of the classification affects a "fundamental right." (*Shapiro* v. *Thompson* (1969) 394 U.S. 618, 658 [22 L.Ed.2d 600, 629, 89 S.Ct. 1322].) The cases hereinbefore cited establish that the right to hold public office is a fundamental right. [ ]

The problem upon which the parties to this proceeding split is whether, under modern methods of communication and traveling about the county,

it reasonably requires five years for a citizen to be prepared to stand for the office of supervisor.

No compelling interest has been shown why a citizen coming into California should be required to wait five years before becoming eligible to the office of county supervisor. The difficulty of making such a showing seems self-evident when one realizes that as to general law counties the residence requirement is only one year. (Gov. Code, § 25041.) [   ] ▮  Hence, it appears to this court that the five-year residence requirement of the Butte County Charter is excessive and arbitrary and violates the Fourteenth Amendment to the United States Constitution. It denies equal protection of the laws to citizens who are required to reside in Butte County this unreasonable length of time before being eligible to the county board of supervisors.

Perhaps in the horse and buggy days the five-year requirement could have been reasonable, but in these days of modern public transportation, the automobile, newspapers, radio, television, and the rapid dissemination of news throughout all parts of the county, the requirement is unreasonable.[2] It excludes certain citizens from public office by a classification which is unnecessary to promote a compelling governmental interest. It is a built-in device to prevent competition against the county's oldtimers for the office of supervisor. Nowhere is it shown that a candidate for the office of supervisor cannot acquire competent knowledge of the county's conditions in much less than five years to qualify him for the office, at least sufficiently to submit to the voters for their choice his knowledge thereof. Respondent has failed to show any compelling interest which justifies imposing such a heavy burden as the five-year restraining period on a resident who desires to stand for election as a supervisor. (Cf. *Keane* v. *Mihaly* (1970) 11 Cal. App.3d 1037 [90 Cal.Rptr. 263]; *Thomas* v. *Mims* (S.D.Ala. [ ] 1970) 317 F.Supp. 179 [ ]; *Blumstein* v. *Ellington* (M.D.Tenn. 1970) ——— F.Supp. ——— (Civ. No. 5815); *Burg* v. *Canniffe* (D.Mass. [ ] 1970) 315 F.Supp. 380 [ ].)

In *Westbrook* v. *Mihaly* (1970) 2 Cal.3d 765 [87 Cal.Rptr. 839, 471 P. 2d 487], where the court struck down the constitutional provision requiring that general obligation bonds be approved by a two-thirds majority of the voters, the court pointed out that "in cases involving 'suspect classifications' or touching on 'fundamental interests,' the [United States Supreme Court] . . . has adopted an attitude of active and critical analysis, subjecting the

---

[2]*Sheehan* v. *Scott, supra,* 145 Cal. 684, held that a five-year residence qualification prescribed in the San Francisco Charter for the office of tax collector was not unreasonable. It was decided in the horse and buggy days (1905). Moreover, no question of unconstitutionality under the Fourteenth Amendment was raised.

classification to strict scrutiny. [Citations.] Under the strict standard applied in such cases, the state bears the burden of establishing not only that it has a *compelling* interest which justifies the law but that the distinctions drawn by the law are *necessary* to further its purpose." (Pp. 784-785.) (Original italics.) The court further stated that the United States Supreme Court has included voting in the category of rights deemed "fundamental" and "[a]ccordingly, state laws which permit or require differential treatment of those attempting to exercise this right have been 'carefully and meticulously scrutinized' (*Reynolds* v. *Sims, supra,* 377 U.S. 533, 562 [12 L.Ed.2d 506, 527, 84 S.Ct. 1362]) in order to determine whether the burdens imposed are 'necessary to promote a compelling state interest.' " (P. 785.) (See also *Cipriano* v. *City of Houma* (1969) 395 U.S. 701 [23 L.Ed. 2d 647, 89 S.Ct. 1897]; *Kramer* v. *Union Free School Dist.* (1969) 395 U.S. 621 [23 L.Ed.2d 583, 89 S.Ct. 1886]; *Castro* v. *State of California* (1970) 2 Cal.3d 223 [85 Cal.Rptr. 20, 466 P.2d 244]; *Otsuka* v. *Hite* (1966) 64 Cal.2d 596 [51 Cal.Rptr. 284, 414 P.2d 412]; *Sei Fujii* v. *State of California* (1952) 38 Cal.2d 718, 730-731 [242 P.2d 617].)

Since the right to run for public office is as fundamental a right as is the right to vote, we have carefully scrutinized the residence restriction in the Butte County Charter. ■ Having done so, we are not convinced that the five-year provision constitutes " 'the least restrictive method of achieving the desired purpose' " (*Westbrook* v. *Mihaly, supra,* 2 Cal.3d at p. 785), namely a reasonable knowledge by a proposed candidate of the general requirements of his county.

[Similarly, in *Camara* v. *Mellon, ante,* p. 714 [94 Cal.Rptr. 601, 484 P.2d 577], we hold that the City of Santa Cruz has not sustained its burden of showing that the three-year requirement for city council candidates in that city is necessary to achieving a compelling state interest.[3]]

---

[3]In *Lindsey* v. *Dominguez* (1933) 217 Cal. 533 [20 P.2d 327], this court upheld a Los Angeles City Charter provision prescribing a two-year residency qualification for eligibility to nomination to the position of city councilman. *Lindsey* was decided long before the "compelling interest" test was applied to the franchise in *Carrington* v. *Rash* (1965) 380 U.S. 89 [13 L.Ed.2d 675, 85 S.Ct. 775], and in an era of less sophisticated communications and transportation media. We express no opinion on its validity today, inasmuch as petitioner Zeilenga has lived in Butte County for more than two years. To so express ourselves would be to render a purely advisory opinion. This we do not do.

In *Hadnott* v. *Amos* (M.D.Ala. 1970) 320 F.Supp. 107, summarily affirmed, 401 U.S. 968 [28 L.Ed.2d 318, 91 S.Ct. 1189], the federal district court held that Alabama could exclude a district nonresident from running for district circuit judge. The statute involved imposed a one-year durational residency requirement. Although there is dicta to the effect that the state has a compelling interest in imposing *some* pre-election durational residence requirement for circuit judges, the court found it unnecessary to determine whether the one-year period was too long since the plaintiff had never been a resident. (320

The County Clerk of Butte County is directed in future elections to disregard the residence requirement of candidates for the county board of supervisors set forth in article II, section 2, of the Butte County Charter.
[ ]

Inasmuch as the issues raised by the petition for writ of mandate to compel the county clerk to certify petitioner Zeilenga as a candidate have become moot, the election having been held, the judgment is affirmed. Petitioners will recover costs herein.

Wright, C. J., McComb, J., Tobriner, J., Mosk, J., Burke, J., Sullivan, J., concurred.

---

F.Supp. at p. 119.) A statute requiring that officials be bona fide residents of the district they represent has been upheld. (*Dusch* v. *Davis* (1967) 387 U.S. 112, 116 [18 L.Ed.2d 656, 659, 87 S.Ct. 1554].)