OFFICE OF THE ATTORNEY GENERAL
State of California

JOHN K. VAN DE KAMP
Attorney General

---------------------------------
                                  :
        OPINION                   :
                                  :  No.  88-792
          of                      :
                                  :  FEBRUARY 17, 1989
                                  :  _____
   JOHN K. VAN DE KAMP            :
    Attorney General              :
                                  :
      N. EUGENE HILL              :
  Assistant Attorney General      :
                                  :
------------------------------------------------------------------


        C.R.E. SMITH filed an application for leave to sue in quo warranto
in the name of the People of the State of California on the relation of Richard
Clements versus proposed defendants William Bennetta, Marlon Malcom, Shirley
Anderson, and Margaret Feldstein.  This application included a Notice of
Application to Sue, a proposed verified Complaint in Quo Warranto, Points and
Authorities for Leave to Sue, a Declaration of William B. Hafferty, and a Proof
of Service of these documents upon the proposed defendants.

        On February 6, 1987, the proposed defendants submitted a response to
the application for leave to sue.  A reply was submitted on March 5, 1987; the
proposed defendants submitted a rebuttal on March 11, 1987.  Proposed defendants
were requested to provide additional information by letter dated May 27, 1987,
and both parties responded to a request for information concerning the bond issue
and recall election, said request issued on September 1, 1987.  Thereafter, this
matter was taken under consideration by the Attorney General's Office.

                            CONCLUSION

It is determined that leave to sue should be denied.

                    STATEMENT OF MATERIAL FACTS

Background:

        On or about April 24, 1984, the Board of Supervisors of the County
of Sonoma adopted a resolution ordering the formation of the Timber Cove County
Water District, formally confirming the April 10, 1984 election of each of the
proposed defendants as directors of said district.  The proposed defendants
entered into possession of said offices on that date and have continued in
possession and have exercised the duties of said offices to the present date.

        A controversy presently exists within the Timber Cove Water District
concerning a proposed expansion and improvement of the water system at a cost of
approximately $1.8 million.  In January of 1987 improvement bonds were issued and
liens against the lots were recorded on February 2, 1987.  On September 22, 1987,
the proposed defendants were the subjects of a recall election.  The voters of
the Timber Cove Water District chose to retain all four directors.  Two of the
proposed defendants have since faced their electorate and been returned to office
(Anderson and Feldstein).

Proposed Defendant Bennetta:

Proposed defendant Bennetta first registered to vote in Sonoma County on April 8, 1980. He owns a two-bedroom home at 22210 Umland Circle in Timber Cove, and claims a homeowner's property tax exemption on the dwelling. Mr. Bennetta is the registered owner of a 1978 Toyota pickup truck. His registration of the vehicle with the Department of Motor Vehicles shows an address of P.O. Box 26603 in San Francisco, and that the vehicle is garaged primarily at 2210 Umland Circle in Timber Cove.

Mr. Bennetta is listed in the San Francisco phone book with an address of 3515 Fillmore Street. Mr. Bennetta declares that he maintains a studio apartment at that address for business purposes, and that he shares such apartment on an alternating basis with another resident of Sonoma County. Mr. Bennetta spends occasional evenings there while on business. He does not claim a renter's credit with the Franchise Tax Board on such address. In response to an inquiry into the percentage of time he spent at Timber Cove between May 1986 and May 1987, Mr. Bennetta declared that he spends the greater degree of time not in Timber Cove or San Francisco but at a friend's home in Petaluma. No further information was provided with respect to this Petaluma abode.

Mr. Bennetta utilizes the previously referenced post office box in San Francisco for all of his mail. His personal stationary shows an address in the upper left-hand corner of 22210 Umland Circle in Timber Cove, and in the upper right-hand corner of P.O. Box 26603 in San Francisco. It is Mr. Bennetta's practice to type in "Address for mail" adjacent to the post office box listing.

The proposed relator claims, through the declaration of private investigator William B. Hafferty, that numerous neighbors, associates and people who work with Mr. Bennetta all contend that his principal residence is in San Francisco. None of these individuals is named; however, one is listed as the Public Information Officer for Pacific Discovery magazine, a journal to which Mr. Bennetta has submitted articles. Mr. Bennetta contends that there is no public information officer for such magazine, and that no one associated with such journal has sufficient contact with him to know his principal residence.

Mr. Bennetta's term on the board expires in 1989.

Proposed Defendant Malcom:

Proposed defendant Marlon Malcom owns a residence at 22174 Coast Highway in Timber Cove, and he claims a homeowner's property tax exemption on this dwelling. He receives his mail at a post office box in Duncan Mills, which address is listed with the Department of Motor Vehicles for the registration of his 1971 Dodge vehicle. He has been registered to vote in Sonoma County, at the Timber Cove address, since October of 1983.

Mr. Malcom maintains a one-bedroom apartment for use an office at 1725 Jones Street in San Francisco. He has been listed in the San Francisco telephone book at this address. He contends that he only occasionally spends nights there when he is in San Francisco on business.

Mr. Malcolm's term on the board expires in 1989.

Proposed Defendant Anderson:

Proposed defendant Shirley Anne Anderson is the owner of a home at 22070 Highway One in Timber Cove. She became sole owner of the property in 1983

pursuant to a divorce decree. Since January, 1984, she has been registered to vote in Sonoma County, listing the Timber Cove property as her residence.

At the time of her divorce, Ms. Anderson and her ex-husband had ownership interests in four properties besides the Timber Cove home: a condominium in Boulder, Colorado, a house in Connecticut, an interest in an office complex in San Rafael, and a house in San Geronimo. It appears that prior to her divorce, Ms. Anderson and her husband primarily resided at the San Geronimo home.

During and following her divorce proceeding, Ms. Anderson had a series of temporary residences throughout Marin County. The May, 1986, Marin County telephone book lists an address for her at 2036 Paradise Drive in Tiburan, a residence she claims she maintained between August 1, 1985, and March, 1986.

In March of 1986 she moved into a home she owns in San Geronimo, separate from the one she and her ex-husband had previously owned. Tenants who had been living at the property had vacated in February of 1986 due to storm damage. Ms. Anderson contends she is merely staying at the property pending extensive repairs. In addition to her Timber Cove and San Geronimo homes, Ms. Anderson has a one-half ownership in a condominium in Novato.

Ms. Anderson utilized her homeowner's property tax exemption for her Novato property between 1983 and March of 1985. Since that time, it has been taken on the Timber Cove property. She has not utilized her renter's credit at any of the aforementioned locales.

Commencing in 1976, and excepting certain periods of 1979 and 1980, Ms. Anderson has been employed by the Marin County Assessor's Office in San Rafael. She claims that at the present time she cannot find suitable work for her skills at Timber Cove. She states that she spends at least one weekend per month at Timber Cove in order to attend Board meetings.

Ms. Anderson's term on the board expires in 1991.

Proposed Defendant Feldstein:

Proposed defendant Margaret Feldstein is the owner, along with husband Milton Feldstein, of a home on Bufano Court in Timber Cove. They also own a home on Cedarberry Lane in San Rafael. Margaret Feldstein has been registered to vote in Sonoma County since January 11, 1984. Although proposed relator contends that she did not vote in the November, 1986, general election, Ms. Feldstein avers that she did so by way of absentee ballot.

Milton Feldstein works in San Francisco and frequently travels. He took the couple's homeowner's property tax exemption on the San Rafael property, is registered to vote there, and has registered two vehicles at that locale. Ms. Feldstein has been retired since 1982. She travels extensively, both with and without her husband. She contends that she spends at least one weekend per month at Timber Cove in connection with Board meetings, and also spends holidays and her husband's vacation time there.

Ms. Feldstein's term on the board expires in 1991.

CONTENTIONS OF THE PROSPECTIVE PARTIES

The proposed relator contends that none of the proposed defendants are residents of Timber Cove, and therefore they are not "voters" within their

election precincts and not qualified to be directors per section 30500 of the Water Code.

The proposed defendants contend that their intent is for Timber Cove to be their domicile and therefore they are lawful domiciliaries of Timber Cove, and duly elected and serving members of the Timber Cove Water District.

ANALYSIS

I

CRITERIA FOR QUO WARRANTO

Quo warranto actions are commenced in the interest of the public to redress wrongs which injuriously affect the public.  City of Campbell v. Mosk (1961) 197 Cal.App.2d 640, 648-50; People v. Lowden (1885) 2 Cal.Unrep. 537, 542. In deciding whether to issue leave to sue, the basic question is whether a public purpose would be served.  As stated in 39 Ops.Cal.Atty.Gen. 85, 89 (1962):

> "In deciding whether to grant or deny leave to sue, the Attorney General must not only consider the factual and legal problems involved, but also the overall public interest of the people of this state . . ."

Or as stated in 35 Ops.Cal.Atty.Gen. 123, 124 (1960):

> "This office has the duty to conduct a preliminary investigation of proposed quo warranto litigation to determine whether a substantial issue of fact or law exists which should be judicially determined (11 Ops.Cal.Atty.Gen. 182, 183; 27 Ops.Cal.Atty.Gen. 33, 35), and leave should be granted only if there is some public interest to be served. (   People v. Bailey, 30 Cal.App. 581, 584.)"

See also 67 Ops.Cal.Atty.Gen. 151 (1984); 40 Ops.Cal.Atty.Gen. 78, 81 (1962); 37 Ops.Cal.Atty.Gen. 172, 175 (1961).  The "public purpose" requirement has been interpreted as requiring "a substantial question of law or fact which calls for judicial decision."  67 Ops.Cal.Atty.Gen. 151, 153 (1984); 25 Ops.Cal.Atty.Gen. 237, 240 (1955).

In deciding whether or not to grant leave to sue, this office does not reach a determination concerning which party should or is likely to prevail before a court.  As stated at 12 Ops.Cal.Atty.Gen. 340, 341 (1949):

> "[I]n acting upon an application for leave to sue in the name of the people of the State, it is not the province of the Attorney General to pass upon the issues in controversy, but rather to determine whether there exists a state of facts or question of law that should be determined by a court in an action quo warranto; that the action of the Attorney General is a preliminary investigation, and the granting of the leave is not an indication that the position taken by the relator is correct, but rather that the question should be judicially determined and that quo warranto is the only proper remedy."

Thus, in reviewing applications for leave to sue in quo warranto, this office addresses three fundamental questions:

1.  Is quo warranto the proper remedy to resolve the issues which are presented?

2.  Has the proposed relator raised a substantial question of law or fact?

3.  Would the public interest be served by judicial resolution of the question?

All three questions must be resolved in the affirmative in order for this office to grant leave to sue.

In determining whether to issue or to deny leave to sue, the Attorney General is accorded broad discretion.  This discretion is derived from the statute.  Code of Civil Procedure section 803 provides that the Attorney General "may" bring the action on his or her own information or on complaint of a private party, and it "must" be brought when the Attorney General "has reason to believe" that the appropriate conditions exist or when directed to do so by the Governor. The use of the word "must" in the latter portion of the provision does not create a mandatory duty due to the qualifying language that the Attorney General must have "reason to believe" that the appropriate conditions exist.  8 Witkin, Cal. Procedure (3d Ed. 1985) Extraordinary Writs, section 7 at p. 646; International Association of Fire Fighters v. City of Oakland, supra, 174 Cal.App.3d 687, 697. Hence, the Attorney General "has discretion to refuse to sue when the issue is debatable".  Id.

II

IS QUO WARRANTO THE PROPER REMEDY?

The first issue to be resolved is whether quo warranto is the proper remedy to test the title to the office of member, Board of Directors, Timber Cove Water District.

As noted above, applications for leave to sue in quo warranto are governed by the provisions of Code of Civil Procedure section 803, which provides in pertinent part as follows:

"An action may be brought by the attorney-general, in the name of the people of this state, upon his own information, or upon the complaint of a private party, against any person who usurps, intrudes into, or unlawfully holds or exercises any public office . . ."

As indicated by this section, the remedy of quo warranto is available to resolve the question of title or right to a public office. Housing Authority v. City Council (1962) 208 Cal.App.2d 599, 603.  In fact, quo warranto is the only proper procedure to determine the right or title to a public office occupied by a de facto incumbent.  Klose v. Superior Court (1950) 96 Cal.App.2d 913. Insofar as this application seeks a determination of the right of proposed defendants to qualify as members of the Board of Directors of the Timber Cove Water District, quo warranto is appropriate.

Leave to sue in quo warranto, however, will only be granted when an application for leave to sue presents a substantial issue of law or fact which it would be in the public interest to determine judicially.  35 Ops.Cal.Atty.Gen 123, 124 (1960); 11 Ops. Cal.Atty.Gen. 182, 183 (1948).

ARE THERE JUSTICIABLE ISSUES ON THE QUESTION
OF PROPOSED DEFENDANTS RESIDENCY?

Division 12 of the California Water Code, section 30000 et seq., governs county water districts.  Section 30500 states that each such district shall have a board of five directors, "each of whom, whether elected or appointed, shall be a voter of the district."  Section 18 of the Elections Code defines "voter" as "any elector who is registered under the provisions of this code."  Section 17 of the Elections Code requires an elector to be "a resident of an election precinct at least 29 days prior to an election."

It follows, therefore, that a director of a county water district must have been a resident of such district at least 29 days prior to being elected thereto.  This is in conformity with previous determinations of this office which have consistently held that local elective public officers must be residents of the particular jurisdiction in which they serve.  See 66 Ops.Cal.Atty.Gen. 229 (1983); 47 Ops.Cal.Atty.Gen. 36 (1966).

Rules governing determination of "residence" are found in Government Code section 244.  It provides as follows:

"(a)  It is the place where one remains when not called elsewhere for labor or other special or temporary purpose, and to which he or she returns in seasons of repose.

"(b)  There can only be one residence.

"(c)  A residence cannot be lost until another is gained.

"(d)  The residence of the parent with whom an unmarried minor child maintains his or her place of abode is the residence of such unmarried minor child.

"(e)  The residence of an unmarried minor who has a parent living cannot be changed by his or her own act.
"(f)  The residence can be changed only by the union of act and intent.

"(g)  A married person shall have the right to retain his or her legal residence in the State of California notwithstanding the legal residence or domicile of his or her spouse."

It has been held that the term "residence" used in section 244 means "domicile."  Walters v. Weed (1988) 45 Cal.3d 1, 7; Smith v. Smith (1955) 45 Cal.2d 235, 239.  As such, we are guided by the test for determining domicile, which "is physical presence plus an intention to make that place his [or her] home."  Fenton v. Board of Directors (1984) 156 Cal.App.3d 1107, 1116.

The question of domicile is a mixed question of law and fact.  Id. at 1117.  Many factors enter into this equation, including where an individual is registered to vote and his or her address for mail (Ballf v. Public Welfare Department (1957) 151 Cal.App.2d 784, 788-89), where his or her tax returns are filed (Johnson v. Johnson (1966) 245 Cal.App.2d 40, 44), where an automobile is registered (8 Ops.Cal.Atty.Gen. 221 (1946)), and where a homeowner's exemption or renter's credit is taken (Cal. Elec. Code § 211; Fenton v. Board of Directors, supra, at p. 1112).

The critical element is one of intent, and while the declarations of the individual in this regard are important, such declarations are not determinative. The acts of the individual must be examined as well. Mauro v. Department of Mental Hygiene (1962) 207 Cal.App.2d 381, 389.

We have before us Declarations from each of the office holders so stating their intent. In all cases, their expressed intent is that their domicile or residence be at their Timber Cove home. The declarations also recite additional actions each have taken that supports that stated intent. Those acts vary among the four proposed defendants, but each sets forth activity that implements their declared intent. The proposed realtors cite other facts which are believed to negate that intent. We find the situation similar to that before us in 8 Ops.Cal.Atty.Gen 221 (1946). In that opinion, we had presented a member of a Board of Supervisors who was alleged not to be a resident of his supervisorial district. The proposed defendant filed a declaration setting forth his stated intent and recited demonstrated facts which supported it, such as voter's registration, mail delivery, personal attendance at the address within the district. The proposed relator filed declarations showing auto registration outside the district, postal changes of address and others tending to suggest residency outside the district.

We denied the application concluding that the direct evidence produced by the proposed defendant, when weighed against the evidence offered by the proposed relator, was not persuasive. That opinion recognized that while a person may have more than one "residence," a person may have only one domicile. Fenton, supra, at page 1115. The material submitted by the proposed relator does establish the fact that each proposed defendant has more than one residence. But it does not establish the domicile of the proposed defendant.

We are mindful of the general principle that ambiguities concerning the right to hold public office should be resolved in favor of eligibility. (Helena Rubenstein Internat. v. Younger (1977) 71 Cal.App.3d 406, 418.)

"We consider disqualification from public office a significant civil disability. In California, the right to hold public office has long been recognized as a valuable right of citizenship. In 1869, in People v. Washington, 36 Cal. 658, 662, our Supreme Court declared that '[t]he elective franchise and the right to hold public offices constitute the principal political rights of citizens of the several States.' In Carter v. Com. on Qualifications etc., 14 Cal.2d 179, 182 [93 P.2d 140], the court pointed out: '[T]he right to hold public office, either by election or appointment, is one of the valuable rights of citizenship . . . The exercise of this right should not be declared prohibited or curtailed except by plain provisions of law. Ambiguities are to be resolved in favor of eligibility to office. . . ." (Italics added.) More recently, the high court, citing Carter, has termed the right to hold public office a 'fundamental right.' (Zeilenga v. Nelson, 4 Cal.3d 716, 720 [94 Cal.Rptr. 602, 484 P.2d 578]; Fort v. Civil Service Commission, 61 Cal.2d 331, 335 [38 Cal.Rptr. 625], 392 P.2d 385].) Thus, any ambiguity in a constitutional provision calling for forfeiture of an existing office and disqualification from holding public office should be resolved in favor of continued eligibility. . . ." ( Helena Rubenstein Internat. v. Younger, supra, 71 Cal.App.3d at 418.)

We see no justiciable controversy over the proposed defendants' domicile. The criteria to establish domicile in accord with the recognized standard has been met by the proposed defendant by facts that are not in dispute. While other facts are given to us, we do not believe that makes for a controversy

appropriate for judicial review.  8 Ops.Cal.Atty.Gen 221, <u>supra</u>; <u>c.f.</u> <u>Fenton</u> v. <u>Board of Directors</u>, <u>supra</u>, 156 Cal.App.3d 1107.

IV

WOULD THE PUBLIC INTEREST BE SERVED BY<br><u>JUDICIAL RESOLUTION OF THIS DISPUTE?</u>

Historically, the Attorney General has not granted leave to sue in quo warranto unless some public purpose would be served.  (67 Ops.Cal.Atty.Gen. 151, 153 (1984).)  The mere existence of a legal dispute does not establish that the public interest requires a judicial resolution of the dispute or that leave automatically should be granted for the purposed relator to sue in quo warranto. (<u>Id.</u>, at 154.)  As stated in <u>City of Campbell</u> v. <u>Mosk</u>, <u>supra</u>, 197 Cal.App.2d 640, 650:

> "The exercise of the discretion of the Attorney General in the grant of such approval to sue calls for care and delicacy. Certainly the private party's right to it cannot be absolute; the public interest prevails."

Here the public interest would not be served by authorizing this action.  the primary issue to be litigated is the intent of the proposed defendant to establish domicile.  That intent has been manifested by evidence submitted to this office and we cannot say as a matter of law it is inadequate or as a matter of fact it is incorrect.  Indeed, precedent supports the opposite conclusion.  8 Ops.Cal.Atty.Gen. 221; <u>Fenton</u> v. <u>Board of Directors</u>, <u>supra</u>, 156 Cal.App.3d 1107.  When coupled with the public interest in eligibility to hold public office and the resolution of ambiguities in support of that request (<u>Helena Rubenstein Internat.</u> v. <u>Younger</u>, <u>supra</u>, 71 Cal.App.3d 406), we see little purpose in forcing the proposed defendant to respond to a judicial proceeding on such showing.  Such disposition would discourage participation of citizens on public boards and commissions such as this water district board.  That result is not in the public interest.  Consequently, for the reasons stated in this analysis, we believe the proposed action not to be in the public interest.  For the foregoing reasons, leave to sue is denied.

* * * * *