113 Cal.Rptr.2d 223 (2002)
93 Cal.App.4th 460
Michael EDELSTEIN et al., Plaintiffs and Appellants,
v.
Patricia FADO, as Director etc., Defendant and Respondent.
No. A093007.
Court of Appeal, First District, Division Four.
October 30, 2001.
Review Granted January 16, 2002.
J. Michael Schaefer, for Appellants.
Louise H. Renne, City Attorney, Thomas J. Owen, Randy Riddle, K. Scott Dickey, Deputy City Attorney, San Francisco, for Respondent.
SEPULVEDA, J.
At the general election held on November 6, 1973, City of San Francisco voters approved Proposition D, a measure amending the election provisions of the City's charter to provide, in the event no mayoral candidate received a majority of the votes cast, for a runoff contest between the two candidates receiving the highest number of votes. (S.F.Charter, § 13.102.) Although the text of the measure does not *224 expressly so provide,[1] as both a matter of local elections practice and in the opinion of the city attorney, Proposition D eliminated any right of a voter to "write in" on the ballot the name of a mayoral candidate, i.e., prohibited write-in voting for mayor.
This lawsuit by two plaintiffsa would-be write-in candidate for mayor and a registered voter who supports his candidacy was filed on the eve of the 1999 mayoral runoff election. Plaintiffs contend Proposition D burdens the unfettered right of electors to vote for candidates of their choice by writing in his or her name on the ballot and therefore runs afoul of the free speech provision of the California Constitution. (Cal. Const., art. I, § 2, subd. (a).) As will appear, whatever our own predilections on the subject (a question we need not face), we are constrained by existing California Supreme Court precedent to agree. Accordingly, we reverse the order of the superior court granting respondent's motion for judgment on the pleadings and remand the cause for entry of a final judgment granting appropriate declaratory relief in favor of plaintiffs.

BACKGROUND
Plaintiffs are Michael Edelstein and Richard Winger. Their complaint for declaratory relief alleged that at the mayoral runoff election held on December 14, 1999, Mr. Edelstein "offer[ed] himself as a write-in candidate for the Office of Mayor" of the City of San Francisco, and Mr. Winger was a qualified elector who sought to cast his vote for Mr. Edelstein by writing in his name on the runoff ballot. Ballots issued to voters by respondent Fado, the City's Director of Elections, do not provide space for write-in candidates, the complaint alleged, and are treated as void if altered by any writings on them. Moreover, plaintiffs alleged, the defendant director refused to accept plaintiff Edelstein's write-in candidacy for mayor.
Contending the inability to run for the office of mayor as a write-in candidate and the reciprocal inability of municipal electors to choose a mayoral candidate by writing in his or her name on the ballot, plaintiffs sought, unsuccessfully, emergency preelection injunctive relief from the superior court, this court, and the California Supreme Court, prior to the December 1999 mayoral runoff election. Postelection proceedings, moreover, eventuated in an order by the San Francisco Superior Court granting defendant's motion for judgment on the pleading leading to this ensuing appeal by plaintiff. We reverse and, as explained below, invite further review by our high court of the constitutional ballot access issue under the free speech provision of the California Constitution.

ANALYSIS

I
Although the subject of write-in candidacies and its implications under the First Amendment to the federal Constitution and the free speech provision of the California Constitution is a close and divisive one (see section IV post), the decisional issue set before us by this appeal is straightforward enough. In Canaan v. Abdelnour (1985) 40 Cal.3d 703, 221 Cal. Rptr. 468, 710 P.2d 268 (Canaan), the California Supreme Court held, by a vote of six to one, that the City of San Diego had violated both the First Amendment *225 and the free speech provision of the California Constitution when it enacted an ordinance barring write-in candidacies in its municipal elections, including runoff elections for mayor.[2] (Id. at p. 724, 221 Cal. Rptr. 468, 710 P.2d 268.)
The tenor of Canaan is unmistakable. Quoting from the high court's opinion almost at random: "There will always be voters whose views, interests or priorities are not in any way represented by the candidates appearing on the ballot. While candidates who do represent these voters' views may have little chance of success, it is important in a free society that political diversity be given expression." (Canaan, supra, 40 Cal.3d at p. 717, 221 Cal.Rptr. 468, 710 P.2d 268.) "`To restrict a voter to only those candidates whose names appear on the ballot arguably denies him any affirmative method of expressing his dissatisfaction with the listed candidates. He faces one choice: he must either select from a group of candidates, all of whom he deems unworthy, or not vote at all. [Citation.]' " (Ibid.) "As the Georgia Supreme Court has noted, `[a] refusal to count [an elector's] vote completely ignores it and is tantamount to a refusal to allow him to cast it.' [Citation.]" (Id. at p. 718, 221 Cal.Rptr. 468, 710 P.2d 268.) "[San Diego's] interest is also insufficient to justify the restriction imposed on the fundamental right to vote in the general election.... [¶] It is not the province of the city to deprive the electors of the right to vote for the candidate of their choice in a paternalistic effort to assure that one candidate receives a majority. It is also artificial to fashion a voting majority by forcing voters to cast their ballots for one of two candidates neither of whom they may deem to be worthy. The risk that a candidate who is not preferred by a majority of the voters will be elected is manifestly outweighed by the need to protect the fundamental right to vote." (Id. at p. 722, 221 Cal.Rptr. 468, 710 P.2d 268.)
Concluding, the Canaan court summed up: "A balancing of the rights of the candidates and voters against the interests asserted by respondents leads to the conclusion that San Diego's prohibition on write-in voting is unconstitutional. A ban on write-in voting burdens the right to be a candidate for public office and the fundamental right to vote for the candidate of one's choice." (Canaan, supra, 40 Cal.3d at p. 724, 221 Cal.Rptr. 468, 710 P.2d 268.)

II
Seven years after Canaan came down, the United States Supreme Court granted a petition for certiorari from a decision of the Ninth Circuit Court of Appeals upholding the State of Hawaii's absolute ban on write-in candidacies for public office. (Burdick v. Takushi (1992) 504 U.S. 428, 112 S.Ct. 2059, 119 L.Ed.2d 245 (Burdick).) Unlike the California Supreme Court in Canaan, in Burdick, the federal high court upheld the prohibition against challenges by both voters and candidates founded on the First and Fourteenth Amendments, and affirmed. Relying on its prior ballot access precedents,[3] including *226 Anderson v. Celebrezze (1983) 460 U.S. 780, 103 S.Ct. 1564, 75 L.Ed.2d 547 (on which the Canaan court had also relied, 40 Cal.3d at pp. 712-713, 221 Cal.Rptr. 468, 710 P.2d 268), Justice White's majority opinion reasoned that under the governing standard, "the rigorousness of our inquiry into the propriety of a state election law depends upon the extent to which a challenged regulation burdens First and Fourteenth Amendment rights.... [W]hen a state election law provision imposes only `reasonable, nondiscriminatory restrictions' upon the First and Fourteenth Amendment rights of voters, `the State's important regulatory interests are generally sufficient to justify' the restrictions. [Citations.]" (Burdick, supra, 504 U.S. 428 at p. 434, 112 S.Ct. 2059, 119 L.Ed.2d 245.)
Assessing the state's elections scheme under the governing standard, the Burdick majority reasoned that "[a]lthough Hawaii makes no provision for write-in voting in its primary or general elections, the [state's] system ... provides for easy access to the ballot until the cutoff date for the filing of nominating petitions, two months before the primary. Consequently, any burden on voters' freedom of choice and association is borne only by those who fail to identify their candidate of choice until days before the primary.... We think .. . any burden imposed by Hawaii's write-in vote prohibition is a very limited one." (Burdick, supra, 504 U.S. at pp. 436-437, 112 S.Ct. 2059.) After concluding that "[t]he appropriate standard for evaluating a claim that a state law burdens the right to vote is set forth in Anderson [supra, 460 U.S. 780, 103 S.Ct. 1564]," the Burdick majority went on to observe that, given the ease of ballot access, Hawaii "need not establish a compelling interest to tip the constitutional scales in its direction." (Id. at pp. 438-439, 112 S.Ct. 2059.)
The state's prohibition on write-in voting "is a legitimate means of averting divisive sore-loser candidacies" (Burdick, supra, 504 U.S. at p. 439, 112 S.Ct. 2059) Justice White continued and, in light of this and related considerations, concluded that when a state's ballot access laws "pass constitutional muster as imposing only reasonable burdens on First and Fourteenth Amendment rightsas do Hawaii's election lawsa prohibition on write-in voting will be presumptively valid, since any burden on the right to vote for the candidate of one's choice will be light and normally will be counterbalanced by the very state interests supporting the ballot access scheme."[4] (Id. at p. 441, 112 S.Ct. 2059 italics added.)

III
Through her counsel, the San Francisco City Attorney, the director tells us that in light of Burdick, supra, 504 U.S. 428, 112 S.Ct. 2059, 119 L.Ed.2d 245, Canaan has *227 been undermined fatally and is no longer good law. We think the essence of the argument, as advanced in respondent's brief, is worth quoting. "[T]he only case specifically addressing write-in voting in California relied on the United States Supreme Court's analysis of elections laws as it existed before a significant change occurred in the [U.S.] Supreme Court's analysis of bans on write-in voting...." "Because the United States Supreme Court has made clear that the Canaan court misread the Supreme Court's case law governing challenges to election procedures, Burdick, not Canaan, controls resolution of this issue. (People v. Superior Court [Williams] (1992) 8 Cal.App.4th 688, 702-703 [10 Cal.Rptr.2d 873] [under the doctrine of stare decisis, California courts are bound by California Supreme Court decisions `unless the United States Supreme Court has decided the question differently'].)"[5]
The point, however, is hardly so simple ... or so simplistic. It is "incontrovertible that the California Constitution is, and always has been, a document of independent force. Any other result would contradict not only the most fundamental principles of federalism, but also the historic bases of state charters...." (People v. Brisendine (1975) 13 Cal.3d 528, 549-550, 119 Cal.Rptr. 315, 531 P.2d 1099.) "Thus in determining that California citizens are entitled to greater protection under the California Constitution ... than that required by the United States Constitution, we are embarking on no revolutionary course. Rather we are simply affirming a basic principle of federalismthat the nation as a whole is composed of distinct geographical and political entities bound together by a fundamental federal law but nonetheless independently responsible for safeguarding the rights of their citizens." (Id. at pp. 550-551, 119 Cal. Rptr. 315, 531 P.2d 1099; see also Cal. Const., art. I, § 24 ["Rights guaranteed by [the California] Constitution are not dependent on those guaranteed by the United States Constitution"]; 7 Witkin, Summary of Cal. Law (9th ed. 1988) Constitutional Law, § 90, pp. 142-144.) More to the point at hand, "state courts are the ultimate arbiters of state law, even textually parallel provisions of state constitutions, unless such interpretations purport to restrict the liberties guaranteed the entire citizenry under the federal charter."[6] (People v. Brisendine, supra, 13 Cal.3d at p. 548, 119 Cal.Rptr. 315, 531 P.2d 1099.)
We think a fair reading of the text of the Canaan opinion makes it clear the California high court's invalidation of San Diego's ban on write-in voting rests on dual constitutional grounds, rests on both the First Amendment to the federal Constitution and on article I, section 2, subdivision (a), of the Constitution of California. In its account of the constitutional groundwork for its analysis of San Diego's ban on write-in voting, the Canaan court described article I, section 2 as a "`protective *228 provision more definitive and inclusive than the First Amendment(Canaan, supra, 40 Cal.3d at p. 715, fn. 9, 221 Cal.Rptr. 468, 710 P.2d 268.) The opinion went on to note that the effects of the ban on write-in voting on the rights of both candidates and voters "are of sufficient magnitude to warrant the protection of the First and Fourteenth Amendments and the comparable provisions of our state Constitution (see Cal. Const., art. I, § 2)." (Id. at p. 715, 221 Cal.Rptr. 468, 710 P.2d 268, italics added.)
In the penultimate paragraph of its opinion, the Canaan court gave explicit voice to the constitutional ground underlying its result by stating that "[t]he right to seek public office and the right to the unrestricted exercise of the franchise are fundamental. They are protected by the First Amendment and article I, section 2 of the California Constitution. San Diego's prohibition on write-in voting impermissibly restricts the exercise of those rights. Not only does the ban prevent voters from casting their ballots for the candidates of their choice, it renders the election process too restrictive. The ban may stifle political association and expression during the election season and leave the voters without meaningful options on election day. Accordingly, this court holds that San Diego's prohibition on write-in voting in municipal general elections contravenes the state and federal Constitutions."[7] (Canaan, supra, 40 Cal.3d at p. 727, 221 Cal.Rptr. 468, 710 P.2d 268, italics added.)

IV
Write-in voting has a long history in the United States, dating from colonial times. (See Permut & Verdon, Protecting the American Tradition, of Write In Voting After Burdick v. Takushi (1992) 9 J.L. and Pol. 185, 187-191; see also Logan, The Right to Write In: Voting Rights and the First Amendment (1993) 44 Hasting L.J. 727.) And as these scholarly materials confirm, even today controversy and disagreement continue to dog the subject, especially in the wake of Burdick, supra, 504 U.S. 428, 112 S.Ct. 2059, 119 L.Ed.2d 245. In a succinct, pre-Burdick account of the write-in voting case law across the nation, the author of the Annotation, Elections: Validity of State or Local Legislative Ban on Write In Votes (1989) 69 A.L.R.4th 948 wrote that "[judicial authority appears to be about evenly divided on the question whether laws banning write-in votes are valid. [Citation.] The opinions of courts favoring validity tend to focus on the legislature's power to regulate the conduct of elections.... Courts expressing the contrary view tend to reason that the paramount concern is protecting individual electors' constitutional freedom of choice or freedom of political expression against unwarranted legislative incursion." (Id. at p. 952.)
Although the issue is as politically significant as it is close, it is also one implicating the state's fundamental legal policies. In California, that policy has been fixed by the only tribunal with the constitutional *229 power to set it, the California Supreme Court. Established doctrines restraining the reviewing authority of intermediate courts of appeal thus constrain us in this case. (Auto Equity Sales, Inc. v. Superior Court (1962) 57 Cal.2d 450, 455, 20 Cal. Rptr. 321, 369 P.2d 937 ["Under the doctrine of stare decisis, all tribunals exercising inferior jurisdiction are required to follow decisions of courts exercising superior jurisdiction. Otherwise, the doctrine of stare decisis makes no sense"].) Given the apparent evolution in the ballot access doctrine within the federal high court since Canaan was decided, we think this case might serve as the vehicle for the California Supreme Court to examine the current vitality of Canaan, a task we are constrained from undertaking.[8]

CONCLUSION
In the meantime, the judgment of the superior court is reversed and the cause is remanded to that court with directions to enter appropriate declaratory relief in favor of plaintiffs. (Canaan, supra, 40 Cal.3d at p. 724, 221 Cal.Rptr. 468, 710 P.2d 268.)
Plaintiffs to recover their costs on appeal.
We concur: REARDON, Acting P.J., and KAY, J.
NOTES
[1] As codified, section 13.102 of the Charter provides, "If no candidate for any elective office of the City and County [excepting offices not relevant here] . . . receives a majority of the votes cast at an election for such office, the two candidates receiving the most votes shall qualify to have their names placed on the ballot for a municipal runoff election."
[2] As the Canaan opinion explained San Diego's municipal voting scheme, "[i]f no candidate receives a majority, the two candidates receiving the highest number of votes are placed on the ballot for the general elections. [Citations.] The only candidates for whom the electorate may cast valid ballots in the general election are those whose names appear on the ballot." (Canaan, supra,40 Cal.3d at p. 708, 221 Cal.Rptr. 468, 710 P.2d 268.)
[3] The federal constitutional ballot access doctrine originated in 1968 with the high court's decision in Williams v. Rhodes (1968) 393 U.S. 23, 89 S.Ct. 5, 21 L.Ed.2d 24 invalidating Ohio's restriction on minority parties on equal protection grounds. Williams was followed by Jenness v. Fortson (1971) 403 U.S. 431, 91 S.Ct. 1970, 29 L.Ed.2d 554, a decision that, despite its formal allegiance to Williams, upheld Georgia's ballot access restrictions. As Professor Tribe has it, "As thesis and antithesis, Williams and Jenness frame the relevant issues and reveal the doctrinal enigmas that bedevil the law of ballot access." (Tribe, American Constitutional Law (2d ed.1988)§ 13-20, p. 1102.)
[4] In a somewhat unusual voting alignment for this court, Justice Kennedy filed a dissenting opinion, in which Justices Blackmun and Stevens joined. (Burdick, supra, 504 U.S. at pp. 442-450, 112 S.Ct. 2059.) The dissent reasoned that "[i]t is critical to understand that petitioner's case is not an isolated example of a restriction on the free choice of candidates. The very ballot access rules the Court cites as mitigating his injury in fact compound it system wide." (Id. at p. 442, 112 S.Ct. 2059 (dis. opn. of Kennedy, J.).)
[5] We think the differences between the court that decided Anderson and the court that decided Burdick lie more in the accents of policy and judgment than in any differences in doctrinal formalism. As noted previously, Burdick relies expressly on Anderson in reaching a result some regard as being at odds with it. (Cf. the law review commentaries cited, post, in part IV.)
[6] Indeed, of late the California high court has breathed even more vitality into the state Constitution's free speech provision. (See Gerawan Farming, Inc. v. Lyons (2000) 24 Cal.4th 468, 101 Cal.Rptr.2d 470, 12 P.3d 720 [ruling that although a marketing order requiring an agricultural producer to contribute to an advertising fund did not violate the First Amendment, as construed by the United States Supreme Court, it did violate the free speech clause of the California Constitution].)
[7] Although not raised by respondent, we inquire on our own motion whether the fact that the San Francisco Charter provision under attack by plaintiffs prohibits the use of write-in votes only in the case of runoff elections makes any difference in the outcome. We think not. The justification for the measure, as tendered in defense of it by respondent, is that it was promoted and adopted by the voters as a means of avoiding the election of City officials by a plurality of voters. That justification, however, was rejected expressly by the Canaan court as constitutionally insufficient. (See Canaan, supra, 40 Cal.3d at p. 722, 221 Cal.Rptr. 468, 710 P.2d 268 ["It is not the province of the city to deprive the electors of the right to vote for the candidate of their choice in a paternalistic effort to assure that one candidate receives a majority"].)
[8] Respondent has not suggested plaintiffs' cause was rendered moot by the conclusion of the 1999 mayoral runoff contest. We agree the issue, as one that is "recurrent yet evades review," presents a justiciable controversy. (See, e.g., Canaan, supra, 40 Cal.3d at p. 709, 221 Cal.Rptr. 468, 710 P.2d 268 ["`On numerous occasions in recent years, [this court has] decided such recurrent election issues although the particular election initially in question had long been completed.'"], citation and internal quotations omitted; Chantiles v. Lake Forest II Master Homeowners Assn. (1995) 37 Cal.App.4th 914, 921-922, 45 Cal.Rptr.2d 1 [right to inspect ballots of homeowners association]; Zeilenga v. Nelson (1971) 4 Cal.3d 716, 719, 94 Cal.Rptr. 602, 484 P.2d 578 [county's durational residency requirement for board of supervisors candidacy]; 9 Witkin, California Procedure (4th ed. 1997) Appeal § 653, at pp. 685-689 [collecting the cases].)