[L. A. No. 14160. In Bank.—March 23, 1933.]

WILLIAM H. LINDSEY, Petitioner, v. ROBERT DOMINGUEZ, City Clerk, etc., Respondent; EMORY J. ARNOLD, Defendant.

534

Carl S. Kegley for Petitioner.

Erwin P. Werner, City Attorney, and Frederick von Schrader and William H. Neal, Assistants City Attorney, for Respondent.

Kenneth H. Scott for Defendant.

PRESTON, J.—Proceeding in mandate by petition of an elector to compel respondent city clerk to omit from the official ballot to be used at the primary election to be held in Los Angeles on May 2, 1933, the name of Emory J. Arnold for the office of councilman of the Tenth Councilmanic District of the city of Los Angeles. The petition, demurrer and answer thereto, present but a single question and that is the qualification of Arnold for said office under the Los Angeles city charter. Section 307 of the charter provides:

"No person shall be eligible to nomination or election to any office under this charter who at the time of his nomination and election is not a qualified elector of this city, and shall not have been a resident of the city for at least two years next preceding his nomination or election, and to be eligible to nomination or election to the office of member of the council, the person nominated or elected must have been a resident of the district from which he is nominated

or elected for at least two years next preceding his nomination or election.''

Arnold, for some seven years prior to December 19, 1932, resided at a place designated as 918 South Beacon Street in said city, in what was then known as Councilmanic District No. 10. On said day he removed to 234 West Adams Street, which was then located in the same district. On January 24, 1933, the boundaries of said district were so altered as to exclude his former residence and make it part of a different councilmanic district. On March 6, 1933, Arnold filed a petition with respondent clerk in due form and took such further steps as are required to place his name on the official ballot for the forthcoming primary election.

Petitioner complaining, asserts that Arnold, because of a deficiency in his period of residence within said district, cannot qualify to hold the office of councilman and hence he instituted this proceeding. It is at once seen that to be qualified to hold said office, Arnold must tie to his present residence about one and one-half years of his first residence, which is now and since January 24, 1933, has been without District No. 10.

█ The city has the undoubted right and power to fix reasonable restrictions upon the right to hold office under its charter. The right to vote and the right to hold office are independent matters. This is evidenced in Constitutions and statutes, both national and state. The doctrine that one does not lose his residence until he gains another has no application here. The sole question is: What meaning shall be given to the word ''district'' found in said above-quoted charter provision? Does it refer merely to the designated political entity, regardless of territory, or does it refer to the area then and at the time in question constituting the district?

No authority in point has been cited us. We must reach a conclusion by analogy and deduction from similar principles. For example, it seems to be generally conceded that where a candidate does not change his residence, and the district boundaries are so gerrymandered as to annex his residence to a new district, he may nevertheless use such period of residence as part or all of the requisite period to qualify him for office in the new territory. (*Gibson* v. *Wood*, 105 Ky. 740 [49 S. W. 768, 43 L. R. A. 699].)

Speaking in terms of the case before us, if Arnold had not removed himself, he could have qualified as a candidate in said above-mentioned other district, although he had not resided therein for all or any of the required time. If he could have used such period of residence for such purpose, had he remained until cut off, it seems logically to follow that he cannot use this same period of time to qualify him as a candidate in the district to which he voluntarily betook himself.

Confusion arises from the fact that Arnold has never at any time resided out of the political entity known as Councilmanic District No. 10. This confusion passes when it is remembered that we are speaking territorially and as of the time in question and not in terms of a political subdivision. If, when Arnold moved, he had located his residence in District No. 9, his residence in old District No. 10 would not have benefited him, but if he had resided in District No. 9 for the period required and that area had later, under alteration of boundaries, become a part of District No. 10, he would in that case have been eligible for office in such new district. In other words, Arnold must have resided in the territory comprising the new district for the period required by law. It seems to us that any other conclusion would bring about confusion, if not material complications. A man who changes his residence must assume the risk of being thereby disqualified.

This holding is in harmony with the recent pronouncement of this court in the case of *Withers* v. *Kerr*, 216 Cal. 528 [14 Pac. (2d) 1017], where one Hinshaw was an independent candidate for Congress from the new eighteenth congressional district, which was established in 1931. This district was carved out of a portion of the old ninth congressional district without any change in precinct lines.

Section 1188 of the Political Code provides that signatures to be attached to independent nomination papers thereunder must be at least five per cent in number of the entire vote cast at the last preceding general election "in the state, district or political subdivision for which the nomination is to be made". It was contended that since the old ninth congressional district was wiped out by the 1931 re-apportionment measure, no independent nomination

for said office could be made in the new district because the latter was not in existence at the last general election.

This court there said: "In order to uphold this contention it would be necessary to conclude that it was the intention of the legislature to abolish the right to independent nominations in the new congressional district, at the same time continuing the right in the district or districts whose boundaries had not been changed. This conclusion would not be justified unless compelled by some expression of legislative will to that effect, and we find none. For the purposes of this proceeding it is enough to say that the term 'district' may be considered as the equivalent of 'area' or 'territory'. Without such construction it is fair to say that the proceedings to nominate Mr. Hinshaw were in substantial compliance with the statute. And with that construction a literal compliance would seem to have been accomplished."

Let the peremptory writ issue forthwith as prayed.

Waste, C. J., Thompson, J., and Seawell, J., concurred.

LANGDON, J., Dissenting.—I dissent.

As the opinion points out, there is an entire absence of authority on the issue before us, and the controlling consideration should therefore be the purpose of the charter provision. If familiarity with the problems of the district and with the voters thereof is the test, then the candidate here can certainly qualify, for he was for the full period a resident of a territory of which the present District No. 10 was a part. In other words, every voter in District No. 10 as it was formerly constituted, resided in the same territorial unit he did.

If the purpose of the statute will not be thwarted by upholding the eligibility of this candidate, then we should, as a matter of policy, do so, and leave to the voters the fullest possible measure of freedom in their choice of officers. In my opinion it is reasonable and proper to say that Arnold was always, during the period in question, a resident of District No. 10; that in spite of the reorganization of the boundaries of said district, he still is, as a result of his change of residence, a resident of said district; and that therefore he has complied with the letter of the charter

provision, and to permit him to be a candidate would do no violence to its spirit.

The question whether he would have been an eligible candidate in the district of his former residence if he had not moved is not involved, and should not be permitted to determine the issue presented herein.

Shenk, J., and Curtis, J., concurred.