Robert HAYES, Petitioner,

v.

MUNICIPALITY OF ANCHORAGE, and Clerk of the Municipal Assembly, in his official capacity, Respondents.

No. S–10602.

Supreme Court of Alaska.

May 3, 2002.

---

**972**

Richard D. Kibby, Anchorage, for Petitioner.

William A. Greene, Municipal Attorney, Anchorage, for Respondent Municipality of Anchorage.

Thomas F. Klinkner, Birch, Horton, Bittner and Cherot, Anchorage, for Respondents Anchorage Municipal Clerk and Assembly.

Before: FABE, Chief Justice,
MATTHEWS, EASTAUGH, BRYNER, and CARPENETI, Justices.

*OPINION*

PER CURIAM.

## I. INTRODUCTION AND PROCEDURAL BACKGROUND

Less than two weeks before the Municipality of Anchorage's impending run-off election for an assembly seat in District 5, Robert Hayes filed suit in superior court to disqualify candidate Brian Whittle from appearing on the ballot. Hayes moved for a temporary restraining order and temporary injunction to stop the May 7 election. He alleged that Whittle fails to meet the one-year residency requirement for municipal candidates set out in Anchorage Municipal Charter § 4.02(b)(2) because, before Anchorage's assembly districts were redrawn as part of the municipality's regular redistricting process in Septem-

ber 2001, Whittle's home was located outside the boundaries of the former "District 5."

Superior Court Judge Peter A. Michalski issued a ruling four days after Hayes filed his complaint, denying his motion to stop the election. The following day, Hayes filed an emergency petition with this court, urging us to review the superior court's decision on an expedited basis so that Whittle's eligibility for office could be determined before the election—then less than a week away.

We ordered an immediate response because Hayes's petition appeared to raise an important legal issue of first impression and to warrant expedited attention. Having now considered the petition and responses, we grant review and decide the merits of Hayes's claim on an expedited basis. As the municipality correctly observes in joining Hayes's request for an immediate resolution, this court has previously held that "[r]ulings in election cases should, if possible, be made prior to the election in order to avoid the needless expense and the shock to the public expectations which would result if an election were overturned."[1]

## II. THE SUPERIOR COURT'S RULING

In denying Hayes's motion to enjoin the election, the superior court relied chiefly on the conclusion that Hayes's claim lacks legal merit. Judge Michalski's decision ably explains the facts of the case and the judge's assessment of Hayes's claim:

Robert Hayes seeks to enjoin the run-off election set for May 7, 2002, claiming the ballot should not include Brian Whittle. After review of the motion [and] responses, ... the court finds the plaintiff's "Complaint for Temporary Restraining Order, Injunction and Declaratory Relief" to be wholly without merit. The court denies the temporary restraining order and injunction.

The [Anchorage] municipal charter [section 4.02] provides in part:

(b) A candidate for the office of assemblyman:

(1) Shall be a qualified voter of Anchorage; and

**1.** *Faipeas v. Municipality of Anchorage,* 860 P.2d 1214, 1216 (Alaska 1993).

(2) Shall be a resident of the district from which he/she seeks election for at least one year immediately preceding the election.

Election districts were redrawn in September 2001. The next regular election was April 2002.

As a result of the redrawing, the residence of Mr. Whittle—the winner of a plurality of votes—was included in what is called District 5. Whittle has lived in the same place over 20 years. Because his house was not in the District previously known as District 5, the plaintiff argues that Mr. Whittle fails the residency requirement noted above.

. . . .

Mr. Hayes's legal position is completely without merit. Mr. Whittle has lived at the same residence for over 20 years. The redrawing of the districts around him does not change that. A common sense reading of the Charter must be to consider the period a citizen has lived within the area newly drawn, not whether the area the citizen is in has the same numerical designation it previously had.

In effect, the present District 5 (though it may in some part· overlap old District 5) is a new entity. Part of the confusion in thinking may be a result in using "District 5" as the name of the district. Given an entirely different name, say "District A," the thought process causing this complaint may have been avoided. The court interprets the Charter to mean that anyone who has lived within what is the newly drawn district for more than one year meets the residency requirement.

To test the question presented, one might ask in what district Mr. Whittle may run under Mr. Hayes's interpretation of the Charter. The answer is nowhere. Mr. Hayes's interpretation of the Charter

results in broad ineligibility for office anytime districts are redrawn, it would encourage misconduct by redistricting authorities, and it tests the limits of common sense.

The request for temporary restraining order and preliminary injunction is denied.[2]

## III. DISCUSSION

Although Judge Michalski addressed an issue of first impression in Alaska, the judge's interpretation of Charter § 4.02 finds substantial support in an opinion of the Alaska Attorney General.[3] and in case law construing similar provisions in other states.[4]

Hayes nevertheless urges us to preclude Whittle's candidacy because, according to Hayes, Whittle has not literally complied with Charter § 4.02's mandate—that is, he has not been "a resident of the district from which he[ ] seeks election for at least one year immediately preceding the election."[5] Hayes's argument literally reads the charter's reference to "district" as requiring Whittle to have lived in "District 5" for more than a year before the election. But this literal reading ultimately proves too much and defeats itself.

Charter § 4.02's use of the word "district" unequivocally refers to a district as constituted at the time of the current election. Thus, if we were to construe § 4.02's reference to "district" to require continuous residency in Assembly District 5, as Hayes suggests we should, § 4.02's focus on the currently constituted district would require us to conclude that only residents who lived in the currently constituted district for at least one year immediately before the April 2002 municipal election would qualify for office. By definition, however, the redistricting process es-

---

**2.** We have edited Judge Michalski's decision to conform to this court's technical guidelines for publication and to eliminate portions that are not germane to the issues presented on review.

**3.** *See* 1994 Informal Op. Att'y Gen. 283 (July 1, 1994; File No. 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) (advising that candidate whose residence, as a result of redistricting, had been placed in a different senate district was entitled to run for that senate district be-

cause "[h]er residence [was] within the current, final boundaries" of the senate district and she had "resided at her current residence for over a decade.").

**4.** *See, e.g., Wenke v. Hitchcock,* 6 Cal.3d 746, 100 Cal.Rptr. 290, 493 P.2d 1154, 1160 (1972).

**5.** Anchorage Municipal Charter § 4.02(b)(2).

tablishes new districts: Assembly District 5, as currently constituted, had no existence a year ago. Under Hayes's logic, then, the conclusion would necessarily follow that nobody has lived in the current assembly district long enough to qualify for office.

In support of Hayes's interpretation, the Municipality of Anchorage advances a somewhat different argument, ostensibly based on Charter § 4.02's underlying policy of maintaining an informed electorate. The municipality reasons that the voters of "District 5" need Whittle to live in that district for a year so that they have an "opportunity to know the candidate"; conversely, it reasons, Whittle needs a year in-district to have "an opportunity to know the peculiar issues and factors affecting the election district." [6]

But the municipality's logic suffers from the same flaw as Hayes's: it mistakenly focuses on District 5 as it existed before redistricting, rather than the currently constituted District 5, where Charter § 4.02 places the focus. When viewed from the perspective of the current district, the municipality's policy argument raises a two-way problem. If we presumed that Whittle's lack of opportunity to acquaint himself with the voters and issues of former District 5 should disqualify him for office for a year after redistricting, then by parity of logic we would also have to presume that any candidates like Hayes, who resides within former District 5's boundaries, should likewise be disqualified from office; for they would similarly lack the opportunity to acquaint themselves with the voters and issues in the areas of the current District 5 that were formerly in another district.

In effect, then, the municipality's argument simply seeks to give a preference to its own chosen segment of the electorate, while disenfranchising another segment. But Anchorage Charter § 4.02 unites all residents within the boundaries of the current district, leaving no reason to presume that any resident's knowledge of its people and issues is superior to any other resident's. And the Alaska Constitution gives all current district residents an equal right to vote and an equal opportunity to run.[7]

In short, Charter § 4.02 makes sense only if construed, as Judge Michalski construed it, to require residency for at least one year before the election within the geographical boundaries of an election district as it is drawn at the time of election.

## IV. CONCLUSION

Because the superior court's interpretation of the disputed residency requirement finds support in the law, comports with sound public policy, and makes common sense, we conclude that Hayes's claim has no legal merit, AFFIRM the superior court's decision, and REMAND with directions to enter a final judgment dismissing the action.

---

**6.** Emphasis omitted.

**7.** *Cf. Gilbert v. State,* 526 P.2d 1131, 1135 (Alaska 1974).