[No. A115529. First Dist., Div. Four. Nov. 21, 2006.]

KEITH A. FAULDER, Petitioner, v.
MENDOCINO COUNTY BOARD OF SUPERVISORS et al., Respondents;
MEREDITH J. LINTOTT, Real Party in Interest.

1364

**COUNSEL**

Law Office of Knox & DeJong, Philip DeJong; Law Offices of Caren Callahan and Caren Callahan for Petitioner.

Jeanine B. Nadel, County Counsel, Frank Zotter, Jr., Chief Deputy County Counsel, Terry N. Gross, Deputy County Counsel, for Respondents.

Steven J. Antler, Mary Ann Villwok and Susan B. Jordan for Real Party in Interest.

**OPINION**

**RUVOLO, P. J.—**

## I.

## INTRODUCTION

Petitioner Keith A. Faulder (petitioner) filed a petition for writ of mandate (petition) seeking a stay of the general election for the office of Mendocino County District Attorney scheduled to take place on November 7, 2006, and directing the Mendocino County Board of Supervisors and Mendocino County Assessor-Clerk-Recorder Marsha Wharff (collectively referred to as

the County) to cancel the election and to hold a special election, pursuant to Elections Code section 8026.[1] Petitioner claims that the special election provision in section 8026 was triggered when the incumbent district attorney, Norman L. Vroman, who was a candidate in a two-person race for reelection, died on September 21, 2006, less than 68 days before the scheduled election.

The County, joined by the surviving candidate, real party in interest (RPI) Meredith J. Lintott, contends that the special election provision of section 8026 applies only to primary elections, and not to general elections. They argue that the circumstances presented by this case are governed instead by section 15402. Section 15402 does not require a special election but rather compels that a deceased candidate's name remain on the ballot and votes cast in his or her favor are to be counted in determining the results. If the deceased candidate receives a majority of the votes, the vacancy will be filled "in the same manner as if the candidate had died subsequent to taking office for that term." (§ 15402.)

For the reasons set forth in this opinion, we conclude that section 8026 applies to *all* elections, including general elections, when a candidate in a two-person, nonpartisan, nonjudicial contest involving an incumbent dies within 68 days of the date set for the election.

Accordingly, the petition is granted, and we issue a peremptory writ of mandate to respondents ordering that the election for Mendocino County District Attorney be canceled, annulled, and invalidated, and that a special election is to be held in accordance with section 8026. We further order that the ballots in the district attorney election already under seal remain so permanently.

## II.

## PROCEDURAL HISTORY

The petition was filed as an original proceeding in the California Supreme Court on October 17, 2006. The matter reached this court when it was transferred by the Supreme Court on October 18, 2006, for expedited review. The writ petition sought to cancel the general election for the office of Mendocino County District Attorney scheduled for November 7, 2006 (the November 7th election), because a "simple and mechanical" application of section 8026 "requires a special election."

We initially denied a stay of the November 7th election, granted RPI status to Lintott, the sole living candidate for Mendocino County District Attorney,

---

[1] All subsequent undesignated statutory references are to the Elections Code.

and obtained informal oppositions from the County and RPI. An order to show cause was thereafter issued, and an expedited hearing was held on the petition on October 31, 2006. Following the hearing, we issued an order sealing the results of the November 7th balloting for the office of Mendocino County District Attorney pending adjudication of this writ proceeding. The County and RPI have each filed a supplemental opposition to the petition.

## III.

## LEGAL DISCUSSION

### A.

Before turning to the merits of the petition, we must briefly address two procedural objections raised by the County and RPI to our consideration of the petition on its merits. First, the County claims that we should not exercise our discretion to hear the petition, but instead, we should remand the matter to the trial court for a hearing and initial adjudication. The County concedes that under Code of Civil Procedure section 1085 we can exercise jurisdiction, but nevertheless argues that there are no "exceptional circumstances" justifying that we do so in this instance. (*Orange County Employees Assn., Inc. v. Superior Court* (2004) 120 Cal.App.4th 287, 297 [15 Cal.Rptr.3d 201].) We reject this contention for several reasons.

This dispute involves a straightforward issue of statutory construction, one we would hear de novo in any case. (*Barner v. Leeds* (2000) 24 Cal.4th 676, 683 [102 Cal.Rptr.2d 97, 13 P.3d 704].) While the County and RPI suggest there are factual gaps in the record that would be corrected by remand and findings by the superior court, they have pointed to no relevant disputed factual issues that need to be resolved before we can reach the legal question posed by the petition. Therefore, nothing would be gained by having the trial court conduct a hearing and issue a ruling before the merits of the petition are addressed by this court.

On the other hand, there are exceptional circumstances presented by this case that require us to decide the question in the first instance. "Cases affecting the right to vote and the method of conducting elections are obviously of great public importance." (*Jolicoeur v. Mihaly* (1971) 5 Cal.3d 565, 570, fn. 1 [96 Cal.Rptr. 697, 488 P.2d 1].)

This petition, transferred to us by our Supreme Court, raises a significant question of statewide importance in the interpretation of election laws governing deceased candidates. Remanding this dispute to the trial court

would only create uncertainty and delay, leaving unresolved the question of who will be the next Mendocino County District Attorney. Thus, this writ presents an important issue impacting public welfare that needs to be expeditiously decided, so as not to interfere unduly with the prosecutorial function of that office. (*Wenke v. Hitchcock* (1972) 6 Cal.3d 746, 751 [100 Cal.Rptr. 290, 493 P.2d 1154] [exercise of original jurisdiction to review residence requirement to run for office]; *Young v. Gnoss* (1972) 7 Cal.3d 18, 21 [101 Cal.Rptr. 533, 496 P.2d 445] [exercise of original jurisdiction to review voter qualifications]; *Coalition for Fair Rent v. Abdelnour* (1980) 107 Cal.App.3d 97, 101 [165 Cal.Rptr. 685] [exercise of original jurisdiction to review initiative measure's qualification for the ballot].)

Similarly, we reject RPI Lintott's argument that we should dismiss the petition because she was not originally named as RPI in the petition when it was filed on October 17, 2006, in the Supreme Court. She claims she "is the person whose interests will be most directly and adversely affected if the writ is issued." As petitioner points out, although not originally named as RPI, Lintott was served with a copy of the petition immediately after it was filed and close in time to when the County was first served. Lintott made a request to be designated RPI one week later, which this court promptly granted. Her preliminary opposition was filed at the same time as the County's opposition. She has also had the opportunity to file a return to the petition and to present oral argument, as has the County. Given the absence of any prejudice to RPI caused by this short delay in joining her as a party, the interests of justice would not be served by granting her request that we dismiss the petition on that ground alone.

## B.

This petition requires us to resolve the parties' conflicting constructions of section 8026. In doing so, we apply well-recognized canons of statutory construction. Our fundamental task in making this determination is to ascertain the Legislature's intent so as to effectuate the law's purpose. (*White v. Ultramar, Inc.* (1999) 21 Cal.4th 563, 572 [88 Cal.Rptr.2d 19, 981 P.2d 944].) We begin our inquiry by examining the statute's words, giving them a plain and commonsense meaning. (*Garcia v. McCutchen* (1997) 16 Cal.4th 469, 476 [66 Cal.Rptr.2d 319, 940 P.2d 906].) However, we do not consider the statutory language "in isolation." (*Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299].) Rather, we look to "the entire substance of the statute . . . in order to determine the scope and purpose of the provision . . . . [Citation.]" (*West Pico Furniture Co. v. Pacific Finance Loans* (1970) 2 Cal.3d 594, 608 [86 Cal.Rptr. 793, 469 P.2d 665].)

Furthermore, the words of a statute must be construed in context and provisions relating to the same subject matter must be harmonized to the

extent possible. (*Lakin v. Watkins Associated Industries* (1993) 6 Cal.4th 644, 659 [25 Cal.Rptr.2d 109, 863 P.2d 179].) Code of Civil Procedure section 1858 mandates that "[i]n the construction of a statute, . . . where there are several provisions or particulars, such a construction is, if possible, to be adopted as will give effect to all." We are thus enjoined, wherever possible, to reconcile seemingly conflicting or inconsistent provisions by reading all parts of a statute together and construing them to achieve harmony rather than holding that there is an irreconcilable inconsistency. (*Wemyss v. Superior Court* (1952) 38 Cal.2d 616, 621 [241 P.2d 525].) Keeping in mind these precepts of construction, we turn to the disputed enactment.

Section 8026 provides as follows:

"(a) Notwithstanding any other provision of law, except for an election for a judicial office, an election shall not be conducted and no votes cast for the office shall be counted, and if counted the votes shall be null and void, if an incumbent is a candidate for a nonpartisan statewide, countywide, or citywide office, or for a nonpartisan office that is elected by division, area, or district, which he or she currently holds at an election at which only one other candidate, excluding any write-in candidates, has qualified to have his or her name placed on the ballot for that office, and either the challenger or the incumbent dies after the hour of 12:01 a.m. of the 68th day before the election.

"(b) A special election shall be called and held when the death of the challenger or the incumbent occurs within the period set in subdivision (a). The special election shall be called by the appropriate governing body within 14 days after the death of the incumbent or challenger. The special election shall be held no later than 88 days after the proclamation or resolution calling the election. Candidates at the special election shall be nominated in accordance with this part, except that forms for securing signatures in lieu of a filing fee need not be made available until 15 days before the first day for circulating nomination papers, in-lieu-filing-fee petitions shall be filed at least seven days prior to the closing of the nomination period, nomination papers shall be delivered for filing to the elections official not less than 68 days and not more than 87 days before the special election, any candidate's statement shall be filed with the clerk no later than the 68th day before the special election, and the Secretary of State shall conduct the randomized alphabet drawing under procedures similar to Sections 13112 and 13113 on the 67th day before the special election. Any candidate who paid a filing fee in connection with the previously scheduled election shall not be required to pay

any additional filing fee, but shall be required to file new nomination papers.

"(c) The Secretary of State or elections official shall take appropriate action to ensure that voters do not erroneously vote in a canceled election."

█ Facially, the meaning of section 8026 appears to be clear. It provides that "an election" is canceled or invalidated, and a special election for the same office must be called, in the rare situation when: (1) the contested election involves only two candidates, one of whom is an incumbent; (2) the election is for a statewide or local nonpartisan office (other than judge); and (3) the incumbent or the challenger dies after 12:01 a.m. of the 68th day before the election. If these requirements are satisfied, a special election must be called within 14 days after the death of the candidate, and the special election must be held within 88 days thereafter. Candidates wishing to run in the special election must complete the filing requirements within 68 days of the date set for the special election.[2]

The parties' disagreement focuses on the word "election" as used in section 8026's admonition that when its requirements are fulfilled, "an *election* shall not be conducted and no votes cast for the office shall be counted" and instead, a special election shall be held. (Italics added.) Petitioner claims the term "election" has a general application to *all elections*, both primary and general, and thus, it should be interpreted to encompass the November 7 General Election for Mendocino County's District Attorney. The County and RPI claim the term "election" applies *only to primary*, and not general, elections. Consequently, they claim it has no applicability to the facts before us.

█ Our interpretive task has been made considerably easier because the term "election" as used in section 8026 has been statutorily defined in section 318 as "*any* election including a primary that is provided for under this code." (Italics added.) █ The Legislature has power to prescribe legal definitions of its own language, and when an act passed by the Legislature embodies a defined term, its statutory definition is ordinarily binding on the courts. (*In re Ogea* (2004) 121 Cal.App.4th 974, 982 [17 Cal.Rptr.3d 698]; *In re Marriage of Stephens* (1984) 156 Cal.App.3d 909, 913 [203 Cal.Rptr. 331].) Terms defined by the statute in which they are found will be presumed to have been used in the sense of the definition. (*Stephens*, at p. 913; see also *Curle v. Superior Court* (2001) 24 Cal.4th 1057, 1063 [103 Cal.Rptr.2d 751, 16 P.3d 166].)

---

[2] A companion statute, section 8027, applies where there is a greater time frame existing between the candidate's death and the scheduled election. In the event that the candidate dies between the 88th and 68th day before an election, this section provides that the filing period to run for that office is reopened up to the 68th day before the scheduled election to enable additional qualified candidates to file and run.

■ Of equal importance is the observation that when the Legislature intended a section of the Elections Code to apply only to primary elections, it expressly adopted language conveying this limitation in scope. For example, section 8025, the section immediately preceding the section which we are examining, is just one of many examples of statutes found in the Elections Code where the Legislature used the modifier "primary" when it intended the reach of the statute to be limited to these elections. (See, e.g., §§ 316, 8003, 8020, 8021, 8022, 8024, 8025, 8301.) However, the Legislature chose not to do so in enacting section 8026. "When the Legislature uses materially different language in statutory provisions addressing the same subject or related subjects, the normal inference is that the Legislature intended a difference in meaning. [Citation.]" (*People v. Trevino* (2001) 26 Cal.4th 237, 242 [109 Cal.Rptr.2d 567, 27 P.3d 283]; see *Branciforte Heights, LLC v. City of Santa Cruz* (2006) 138 Cal.App.4th 914, 936 [42 Cal.Rptr.3d 96].)

Thus, section 8026 is unambiguous on its face, and, given the statutory definition of "election," section 8026 applies to the general election for district attorney scheduled for November 7, 2006. Despite this literal interpretation, County and RPI respond that reading section 8026 to apply to both general and primary elections would create an irreconcilable conflict with another statutory provision—section 15402.

Section 15402 provides as follows: "Whenever a candidate whose name appears upon the ballot at any election dies after the 68th day before the election, the votes cast for the deceased candidate shall be counted in determining the results of the election for the office for which the decedent was a candidate. If the deceased candidate receives a majority of the votes cast for the office, he or she shall be considered elected and the office to which he or she was elected shall be vacant at the beginning of the term for which he or she was elected. The vacancy thus created shall be filled in the same manner as if the candidate had died subsequent to taking office for that term."

The County and RPI take the position that "the correct procedure is set forth under § 15402 . . . , i.e., that the election go forward with the ballots as printed and that the votes be counted. If the current challenger receives a majority of the votes, she will be elected; if not, then the Board of Supervisors will select a candidate for the position to serve the term provided by law."

■ Where, as here, we are called upon to interpret two allegedly inconsistent statutes to determine which applies under a particular set of facts, our goal is to harmonize the law. (*Estate of McDill* (1975) 14 Cal.3d 831, 837 [122 Cal.Rptr. 754, 537 P.2d 874].) In doing so, "we must consider the

following questions: What was the intent of each statute under consideration? Can the two be harmonized so that the legal effect intended by each can be carried out? If not, what is the legal significance of such a statutory conflict, and how should it be resolved?" (*McLaughlin v. State Bd. of Education* (1999) 75 Cal.App.4th 196, 211 [89 Cal.Rptr.2d 295] (*McLaughlin*).)

█ We disagree with the County and RPI that if section 8026 is construed as encompassing general elections, it is in irreconcilable conflict with section 15402. Sections 8026 and 15402 can be harmonized. Quite simply, we view the more specific section 8026 as an exception to, and a subset of, the broader statute, section 15402. That is, while section 15402 generally provides that elections shall proceed despite the death of one of the candidates, section 8026 carves out an exception for a very limited class of races: those involving the death of a candidate in a two-candidate contest for a nonpartisan, nonjudicial office, where one of the candidates is an incumbent. In only those instances, the election is not to proceed under section 15402, but instead the filing period is to be reopened so additional candidates can enter the race, and the contest concluded by a special election to be held within a specified time frame. Thus, section 8026 constitutes a special statute dealing with a particular subject, and controls and takes precedence over section 15402, a more general statute on the same subject. (See generally *McLaughlin, supra,* 75 Cal.App.4th at pp. 223–224; see also *Hughes Electronics Corp. v. Citibank Delaware* (2004) 120 Cal.App.4th 251, 270 [15 Cal.Rptr.3d 244]; *Gomes v. County of Mendocino* (1995) 37 Cal.App.4th 977, 988 [44 Cal.Rptr.2d 93].)

█ This interpretation is further supported by yet another canon of statutory construction. Section 8026, subdivision (a) begins, "Notwithstanding any other provision of law . . . ." Those six words have special interpretative importance. This statutory phrase has been called a " 'term of art' " (*People v. Franklin* (1997) 57 Cal.App.4th 68, 73–74 [66 Cal.Rptr.2d 742]) that declares the legislative intent to override all contrary law. (*People v. Tillman* (1999) 73 Cal.App.4th 771, 784–785 [86 Cal.Rptr.2d 715]; see also *In re Marriage of Cutler* (2000) 79 Cal.App.4th 460, 475 [94 Cal.Rptr.2d 156] ["notwithstanding any other provision of law" "signals a broad application overriding all other code sections" (italics omitted)]; *Caliber Bodyworks, Inc. v. Superior Court* (2005) 134 Cal.App.4th 365, 383 [36 Cal.Rptr.3d 31].)

█ In summary, relying on textual canons of statutory construction alone, we have no difficulty concluding that section 8026 applies to the contested election for Mendocino County District Attorney, in light of the death

of the incumbent, which occurred less than 68 days before the scheduled election.

 Moreover, if section 8026 "is susceptible to more than one reasonable construction" in light of section 15402, resort to extrinsic materials such as the legislative history is then appropriate to assist in resolving the statutory ambiguity. (*Diamond Multimedia Systems, Inc. v. Superior Court* (1999) 19 Cal.4th 1036, 1055 [80 Cal.Rptr.2d 828, 968 P.2d 539]; see *Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1387 [241 Cal.Rptr. 67, 743 P.2d 1323] [both the legislative history of the statute and the wider historical circumstances of its enactment may be considered in ascertaining the legislative intent].) These legislative materials support the conclusion that section 8026 applies to these circumstances.

The legislation that eventually became section 8026 was prompted by the 1986 San Mateo County election for sheriff. "The incumbent, Brendon Maguire, was very popular and drew only one opponent," who many considered unqualified to hold the office. (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading of Assem. Bill No. 2582 (1987–1988 Reg. Sess.) May 27, 1988, p. 2.) When the incumbent sheriff died shortly before the election, existing law mirrored section 15402 and required the election to be held with the deceased candidate and challenger on the ballot. Should the deceased candidate win, the office would become vacant; and "[t]he vacancy thus created shall be filled in the same manner as if the candidate had died subsequent to taking office for that term." (Former § 17113.)

Assemblyman Lou Papan intervened and introduced successful urgency legislation to have the election postponed in order to reopen the nomination period. (Assem. Bill No. 2739 (1985–1986 Reg. Sess.) (Assembly Bill 2739); *White v. Church* (1986) 185 Cal.App.3d 627, 629 [231 Cal.Rptr. 565] (*White*); Stats. 1986, ch. 96, § 1, pp. 228–229.) The legislation was introduced because "[o]ther qualified candidates did not declare their candidacies because the incumbent sheriff was seeking reelection. It is necessary to cancel the upcoming election and hold a special election . . . so that voters will have a full and fair opportunity to select their sheriff from the broadest field of qualified candidates possible." (Stats. 1986, ch. 96, § 3, p. 230.) The legislation passed and became former section 17113.5 (the Papan bill).

However, former section 17113.5, which canceled the election for sheriff in San Mateo County and scheduled a new special election, was declared unconstitutional as invalid special legislation by this division in *White, supra,* 185 Cal.App.3d 627. This court concluded: "We are aware of no other

instance in the history of this state where legislation has been enacted which has interfered with the election process once that process, as here, has been set in motion. We hold that action invalid under the California Constitution." (*Id.* at p. 633.)

In response to the *White* decision, another legislator from San Mateo County introduced Assembly Bill No. 2582 (1987–1988 Reg. Sess.) (Assembly Bill 2582), containing the language of current section 8026. This legislation was an obvious attempt to remedy the constitutional problems identified by the court in *White*. Instead of singling out for special treatment the 1986 election for San Mateo County Sheriff, the Legislature enacted section 8026 to apply generally to a narrowly defined situation—specifically, when an incumbent is a candidate for a nonpartisan office and has only one opponent, and the incumbent or challenger dies shortly before the election. The legislation, which permits candidates who might not otherwise have wanted to challenge an incumbent an opportunity to run in the special election, was to be known and cited as the Brendon Maguire Act. (See Assem. Bill 2582, enacted as Stats. 1988, ch. 391, § 1, p. 1732.)

Therefore, section 8026 is the direct legislative descendent of Assembly Bill 2582, which sought to correct the constitutional flaws in the Papan bill, and allow for a special election *whenever* a candidate in a two-person nonpartisan, nonjudicial election involving an incumbent dies within 68 days of the scheduled election.[3] The obvious purpose of this legislation was to provide the voters with a chance to have a real choice among qualified candidates when they may have been deprived of it by the death of a candidate shortly before the election and to allow qualified persons, who aspire to the position left vacant by the death of a candidate, but who were reluctant to run against an incumbent, a chance to place their candidacy before the voters.

One legislative analyst, considering the potential impact of Assembly Bill 2582 on California election law indicated that "while this bill mandates a special election, the situations needed to trigger" Assembly Bill 2582 are "so unique" that it "would very rarely be activated." (Governor's chaptered bill file, analysis of Assem. Bill No. 2582 (1987–1988 Reg. Sess.) p. 10.) Thus,

---

[3] The County and RPI argue that because section 8026 was enacted in response to the June 3, 1986 San Mateo County election for sheriff, then that fact evinces the Legislature's intent that the new law was to apply only to primary elections because that election itself was a primary election. This is factually incorrect. While the election for the office of San Mateo County Sheriff took place in June 1986, and thus *coincided* with primary elections held on that date, the sheriff's race, which involved only two candidates for a nonpartisan election, was the final election for that office, not a primary election. (*White, supra,* 185 Cal.App.3d at p. 629.) Thus, it is misleading to characterize the facts surrounding the 1986 election as supportive of legislative intent to limit the scope of section 8026 only to primary elections.

from its inception, it was envisioned that the provisions of sections 8026 and 15402 could be reconciled, with the more specific provisions of section 8026—although rarely invoked—taking precedence over the more general provisions of section 15402.

 But perhaps the real interpretive coup de grâce to the arguments of the County and RPI comes in the form of the legislative history of section 8026.[4] As to these materials, " '[s]tatements in legislative committee reports concerning the statutory purposes which are in accordance with a reasonable interpretation of the statute will be followed by the courts. It will be presumed that the Legislature adopted the proposed legislation with the intent and meaning expressed in committee reports.' [Citation.]" (*In re Marriage of Jafeman* (1972) 29 Cal.App.3d 244, 265 [105 Cal.Rptr. 483]; accord, *California Teachers Assn. v. Governing Bd. of Rialto Unified School Dist.* (1997) 14 Cal.4th 627, 646 [59 Cal.Rptr.2d 671, 927 P.2d 1175].)

Although section 8026 began its life as section 6490.3, it was first introduced legislatively as Assembly Bill 2582. We find nothing in the committee reports analyzing Assembly Bill 2582, or elsewhere in the legislative history, indicating an intent to limit application of this bill to only primary elections.

To the contrary, early versions of Assembly Bill 2582 sought to add a new section to the Elections Code applying the cancellation and special election provisions to a *"primary or general election"* where either the incumbent or other candidate dies less than 59 days before the election, or at any time before a primary election. (Assem. Bill 2582 as introduced March 6, 1987, p. 1, italics added.)

Assembly Bill 2582 was amended by the Assembly on April 28, 1987, and June 18, 1987. The Legislative Counsel's Digest accompanying the June 18th amended bill noted "[t]his bill would provide that notwithstanding any other, or specified, provisions of law an election which is scheduled to be held with the *statewide primary or general election* shall not be conducted . . . ." (Legis. Counsel's Dig., Assem. Bill No. 2582 (1987–1988 Reg. Sess.) as amended June 18, 1987, p. 1, italics added.) The amended language expanded the time for which a special election must be held from 59 to 64 days. (*Ibid.*)

Assembly Bill 2582 was amended again on July 13, 1987, to expand the time to 68 days, and to declare the bill urgent legislation allowing it to go

---

[4] We take judicial notice of certain materials from the legislative history of section 8026, including legislative committee reports and various versions of Assembly Bill 2582 as appearing in the Assembly and Senate committee bill files. We also grant the County's request to take judicial notice of the letter from the sponsor of Assembly Bill 2582 transmitting the final version of the bill to the Governor for signing.

into effect immediately. (Legis. Counsel's Dig., Assem. Bill No. 2582 (1987–1988 Reg. Sess.) as amended July 13, 1987, p. 1.) It was noted that the bill was urgent "[i]n order to enhance the democratic rights of voters in upcoming school, special district, and municipal elections by ensuring that a special election will be held when an incumbent of a nonpartisan office who has only one opposing candidate dies very close to the election." (Assem. Com. on Elections, Reapportionment and Const. Amends., Amends. to Assem. Bill No. 2582 (1987–1988 Reg. Sess.) as amended June 18, 1987, p. 15.) This amendment once again made reference to the bill applying to an election scheduled for any primary *or* general election. (Legis. Counsel's Dig., Assem. Bill No. 2582 (1987–1988 Reg. Sess.) as amended July 13, 1987, p. 1.)

When the bill was delivered to the state Senate, it underwent further amendments bringing it closer to the form today appearing in section 8026. A late amendment in 1987 deleted the specific reference to "statewide primary or general election," and replaced it with the all-inclusive term "election."[5] (Legis. Counsel's Dig., Assem. Bill No. 2582 (1987–1988 Reg. Sess.) as amended Sept. 9, 1987, p. 1.) Several more changes were made over the ensuing year and the bill was signed into law by the Governor and chaptered on August 11, 1988. (Stats. 1988, ch. 391, §§ 1, 2, pp. 1732–1733.)

■■■ Thus, the plain reading of this legislative history confirms once again that it was the express intent of the Senate, with which the Assembly concurred, that Assembly Bill 2582, codified today as section 8026, applies regardless of whether the election before which the incumbent candidate or challenger dies is a primary or general election.

■■■ Consequently, when viewed through the prism of well-known principles of statutory construction and the legislative history of the statute, the County and RPI's interpretation of section 8026 is manifestly incorrect. In claiming that section 8026 applies only to primary elections, the heart of their argument is that section 8026 appears in a portion of the Elections Code dealing with "Primary Election Nominations." RPI claims "[t]he placement of Section 8026 in the part and chapter pertaining specifically to primary elections is certainly instructive as to the legislature's intent." However, our Supreme Court has cautioned that one cannot use the title of the subdivision in which a particular statute is found to derive any meaning whatsoever with

---

[5] Nothing in the legislative history of the 1987 amendment suggests any substantive purpose for this change. As we have already noted, "election" is statutorily defined, and is simply another term for "any election including a primary that is provided for under this code." (§ 318.) Thus, this amended language created no substantive difference, and we conclude the removal of the words "statewide primary or general" from the final version of Assembly Bill 2582 constituted a technical, nonsubstantive revision.

respect to the proper interpretation of the statute. (*Santa Clara Local Transportation Authority v. Guardino* (1995) 11 Cal.4th 220, 242–243 [45 Cal.Rptr.2d 207, 902 P.2d 225].) Perhaps more importantly, section 5 of the Elections Code states specifically: "Division, part, chapter, article, and section headings do not in any manner affect the scope, meaning, or intent of this code." Thus, contrary to the position of the County and RPI, no inference as to the scope of section 8026 can be drawn from its placement in the portion dealing with primary elections.

County and RPI also contend that certain words used in section 8026 imply that section 8026 is applicable only to primary elections. They point to the section's limitation to "two-person" contests, and urge that this usage necessarily refers to primaries because general elections "always" involve two candidates. Thus, applying section 8026 to general elections would be "a [t]autology," since the limiting language would then be unnecessary.

We disagree. While most nonpartisan races in general elections involve only two candidates, there *are* nonpartisan, nonjudicial contests that are not necessarily so limited. (See § 334.)[6] Therefore, the factual assertion that two-person elections must only refer to primary elections is flawed. Furthermore, even if the County and RPI were correct that general elections always involve two-person races, the inclusion of the "two-person" limitation is consistent with an intent by the Legislature to make clear that section 8026 applied to *all* elections, including primaries.

The County and RPI also argue that because section 8026 applies to candidates who "ha[ve] qualified" to appear on a ballot, this language can only refer to primary elections, because persons running in general elections are "nominated" for those ballot slots by virtue of receiving the highest number of votes in a primary election, and are not "qualified" for the general election. This argument again erroneously assumes that all two-person nonpartisan elections occurring during the general election period must have survived primary election races. As has already been noted, not all elections occurring in the fall are runoffs, and thus, they may not involve persons who have already been "nominated" for election through a primary contest. Moreover, there is no definition in the Elections Code defining the term "qualified" for election, and the parties have not cited any authority which supports this argument.

---

[6] The legislative materials relating to section 8026 include a budget analysis confirming that the Secretary of State indicated that this bill would have limited impact on statewide elections, because there was only one statewide nonpartisan office, the Superintendent of Public Schools, "and that rarely are there only 2 candidates for that office." (Governor's chaptered bill file, Assem. Bill No. 2582 (1987–1988 Reg. Sess.); Dept. of Finance, Enrolled Bill Rep. (Aug. 4, 1988) analysis of bill as amended June 30, 1988, p. 2.) That election is held in the general election in November at the time of "each gubernatorial election." (Cal. Const., art. IX, § 3.)

■ The County and RPI shroud their legal arguments with policy concerns for the cost, delay, and inefficiency that will result from applying the provisions of section 8026 to general elections. They further claim that voting officials in Mendocino County and "county clerks around the state" have interpreted the statute as applying only to primary elections.[7] While we have great respect for the office, the Mendocino County Assessor-Clerk-Recorder is not empowered with the equivalent regulatory power of state agencies to whose actions courts might, in some instances, give great weight. (*Morris v. Williams* (1967) 67 Cal.2d 733, 748 [63 Cal.Rptr. 689, 433 P.2d 697]; *Rible v. Hughes* (1944) 24 Cal.2d 437, 445 [150 P.2d 455].) In any event, even the very case relied on by the County for this proposition declares it is the duty of the courts to reject administrative action that is contrary to law: "While the construction of a statute by officials charged with its administration, including their interpretation of the authority invested in them to implement and carry out its provisions, is entitled to great weight, nevertheless 'Whatever the force of administrative construction . . . final responsibility for the interpretation of the law rests with the courts.' [Citation.] Administrative regulations that alter or amend the statute or enlarge or impair its scope are void *and courts not only may, but it is their obligation to strike down such regulations.* [Citations.]" (*Morris v. Williams, supra,* 67 Cal.2d at p. 748, italics added.)

■ These appeals to policy considerations are, at bottom, entreaties to take action that would take us outside the judicial function. "Respect for the political branches of our government requires us to interpret the laws in accordance with the expressed intention of the Legislature, and we have 'no power to rewrite the statute . . . to make it conform to a presumed intention [that] is not expressed.' [Citation.]" (*Songstad v. Superior Court* (2001) 93 Cal.App.4th 1202, 1208 [113 Cal.Rptr.2d 729].) In interpreting statutes, courts follow the Legislature's intent, as exhibited by the plain meaning of the actual words of the law, whatever may be thought of the wisdom, expediency, or policy of the act. (*Tesco Controls, Inc. v. Monterey Mechanical Co.* (2004) 124 Cal.App.4th 780, 792 [21 Cal.Rptr.3d 751].)

In conclusion, we have invoked all applicable canons of statutory interpretation in an effort to determine whether section 8026 applies to the November 7, 2006 election for the Mendocino County District Attorney. Plain meaning, harmonization of statutes, use of technical legislative language, and legislative history, all lead to only one possible answer—it does.

---

[7] In addition to raising this point in their return to the petition, we also received an unsolicited letter from a statewide organization of county voter officials supporting the County's position. That letter, which did not comply with the legal requirements of amicus curiae filings (see Cal. Rules of Court, rule 13(c)), was not filed, and has been returned to the sending party without being considered.

## IV.

Let a peremptory writ of mandate issue commanding respondents to call a special election for the office of district attorney in accordance with section 8026. In addition, the November 7, 2006 election for the office of Mendocino County District Attorney is canceled, annulled and invalidated, and the ballots cast for that office and any tabulation of those ballots shall remain permanently under seal. Petitioner shall recover his costs for this proceeding. (Cal. Rules of Court, rule 56(m).) This opinion shall be final as to this court immediately. (Cal. Rules of Court, rule 24(b)(3).)

Reardon, J., and Rivera, J., concurred.

The petition of respondents and real party in interest for review by the Supreme Court was denied December 20, 2006, S148400.